# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# COLUMBIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:04-cr-00006 |
| RONALD S. BROWN, | ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Before the Court is Ronald S. Brown's Motion for Compassionate Release. (Doc. No. 40). He asserts extraordinary and compelling reasons for release from prison based on his age, various health conditions, and susceptibility of contracting COVID-19. Mr. Brown's administrative request to the warden for compassionate release was denied and it is not disputed that he has exhausted administrative remedies. His motion is ripe for decision. (Doc. Nos. 43; 44; 50; 51; 55).[1]

Mr. Brown pled guilty to being a felon in possession of a firearm when he hit his girlfriend over the head with a gun and fired two shots into his girlfriend's sister's car. (Presentence Investigation Report ("PSR") ¶¶ 4–5). A police chase ensued, during which Mr. Brown fired and missed officers, who returned fire and hit him. He was then arrested.

Mr. Brown was sentenced to the statutory maximum of 120 months consecutive to any anticipated state sentence arising from the same offense of conviction. At sentencing, he suffered from "ulcers, diabetes and high blood pressure" that were "controlled through prescription

---

[1] Mr. Brown agrees that the Court may rule on his request "without the holding of an evidentiary hearing." (Doc. No. 51 at 1).

medications." (Id. ¶¶ 53, 55). Now 67, Mr. Brown continues to receive medications that appear to control his diabetes and high blood pressure. (Doc. No. 40-2 at 1, 5). On January 24, 2020, he reported to the prison pharmacist that his diabetes was "perfect," with no "distress" and "no observed problems." (Id. at 4). However, since his sentencing in 2004, he is being treated for "cutaneous T-cell lymphoma," for a detached retina, and low back pain. He is receiving chemotherapy for his cancer, surgery for his blind eye, and uses a cane. (Id. at 1–2, 6, 8). He is scheduled for additional chemotherapy in August 2020, (Id. at 9), and ongoing eye treatment, (Id. at 6). On February 26, 2020, during his oncology checkup, he was "well, alert and oriented x3." (Id. at 9).

Dr. Paul Bryant, a doctor of infectious disease at the Centennial Medical Center, has reviewed Mr. Brown's medical records and reports that he is in the "high risk category for developing a severe disease were he to be infected" with COVID-19. He has identified several conditions that put "Mr. Brown at risk for severe COVID-19" including "diabetes, hypertension, hyperlipidemia, and possibly chronic liver disease." (Doc. No. 51-1 at 2). Dr. Bryant notes that Mr. Brown requires daily insulin injections and had "poorly controlled diabetes" in June 2019, but he "improved over time," as shown in his hemoglobin levels from January 2020. (Id. at 1). He agrees that Mr. Brown's hypertension is maintained by medicine, his lymphoma was treated, and Mr. Brown is not currently taking any medications "that could alter his ability to fight infection." Dr. Bryant suggest that Mr. Brown may have chronic liver disease because a detectable amount of the Hepatitis C virus was discovered in an October 2019 test, although by January 2020 the virus was "not detected" and he is "unable to determine the current condition of [Mr. Brown's] liver." (Id.). He also finds that Mr. Brown is "at risk for experiencing serious deterioration in physical or mental health because of the aging process." (Id. at 2).

Mr. Brown seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act of 2018, Pub. L. 115-391, that authorizes a court to reduce a sentence when "extraordinary and compelling reasons warrant such a reduction," consistent with the policy statement in Sentencing Guidelines § 1B1.13. The policy statement recognizes "extraordinary and compelling reasons" may exist based on the defendant's medical condition, age, family circumstances, or other reasons:

> (A) Medical Condition of the Defendant.
>
> > (ii) The defendant is--
> > (I) suffering from a serious physical or medical condition,
> > (II) suffering from a serious functional or cognitive impairment, or
> > (III) experiencing deteriorating physical or mental health because of the aging process,
> > that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant.-- The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>  . . .
> (D) Other Reasons.-- As determined by the Director of the Bureau of Prison, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivision (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1 (hereinafter "Note 1A," "Note 1B," and "Note 1D").

Mr. Brown seeks compassionate release due to his serious medical condition under Note 1A, his age under Note 1B, and his health and age factors together with the COVID-19 pandemic under Note 1D. (Doc. No. 40 at 1, 4, 16, 20; Doc. No. 51 at 1–2). The government opposes relief for Mr. Brown because his health concerns do not create an "immediate danger," are not chronic, or unusual for his age. (Doc. Nos. 43 at 2, 6–7; 55 at 4). It is Mr. Brown's burden to establish that compassionate release is warranted. See United States v. Cowart, 90 F.3d 154, 159 (6th Cir. 1996).

## Medical Conditions

Mr. Brown has not shown that his medical condition warrants compassionate release under Note 1A. Mr. Brown argues that his diabetes, hypertension, and possible liver disease are "serious physical or medical conditions." (Doc. No. 51 at 1–2). To be entitled to relief, Note 1A requires that his physical or medical condition(s) "substantially diminish[] [his] ability . . . to provide self-care" in prison. Based upon the record before the Court, they do not.

Mr. Brown's medical records show that he is receiving effective care for his various medical conditions. He admits that his diabetes is "perfect," (Doc. No. 40-2 at 4), and medicine controls his high blood pressure, (id. at 1, 5). Dr. Bryant notes that his lymphoma "appears to have been treated previously," (Doc. No. 51-1 at 1), and there is no medical diagnosis that he has liver disease. See United States v. Gotti, No. 02 CR 743-07 (CM), 2020 WL 497987, at *5 (S.D.N.Y. Jan. 15, 2020) (denying compassionate release based on lung cancer where there was no diagnosis in the medical records). Mr. Brown presents no physical side effects that interfere with his ability to take care of himself. There is simply insufficient medical information to conclude that Mr. Brown is entitled to relief.

## Age

Mr. Brown also fails to establish that he suffers from age-based physical or mental health deterioration to be entitled to relief. Mr. Brown must establish that he (1) is at least 65 years old; (2) has served 75 percent, or at least 10 years of his sentence; and (3) "is experiencing a serious deterioration in physical or mental health because of the aging process." U.S.S.G. § 1B1.13 cmt. n.1(B). Mr. Brown clearly satisfies the first two requirements because he is 67 years old and has completed more than 75 percent of his sentence. Mr. Brown argues that his diabetes, high blood pressure, cutaneous T-cell lymphoma, single eye blindness, and that he sometimes requires a cane

4

to walk, show serious age-based health deterioration to satisfy the third requirement. The Court disagrees.

Again, the medical records do not support the conclusion that Mr. Brown's age-based deterioration justifies release. First, his cutaneous T-cell lymphoma is being successfully treated, even if it is in some way related to aging. See United States v. Mangarella, No. 306CR151FDWDCK3, 2020 WL 1291835, at *3 (W.D.N.C. Mar. 16, 2020) (finding that defendant had not "specifically establish[ed] how [his] conditions are causing serious deterioration in his health"). Second, there is no medical diagnosis that he has liver disease, notwithstanding that he tested positive for Hepatitis C in the past, but not recently. Third, Mr. Brown had diabetes and high blood pressure at the time of sentencing that were controlled with medication then and there is no evidence that this has worsened. Actually, Dr. Bryant believes that his diabetes, while concerning, may be improving. See Id. (denying compassionate release where the defendant was in stable medical condition). A pre-existing condition, without any evidence that the condition is worsening, does not show the effect of aging. Fourth, Mr. Brown's single-eye blindness and back pain that sometimes requires the use of a cane are a product of aging. But as they currently manifest, they are most appropriately considered "ordinary geriatric ailments" and do not rise to the extraordinary level required for compassionate release. It is not extraordinary and compelling when a defendant has ordinary geriatric conditions such as using a cane, back pain, or vision problems such as single eye blindness and glaucoma. See, e.g., United States v. Estrella, No. 2:15-cr-00032-GZS, 2019 WL 6689897, at *1 (D. Me. Dec. 6, 2019) (denying relief to 69-year-old with limited mobility who required the use of a cane); United States v. Gross, No. 2:04-CR-32-RMP, 2019 WL 2437463, at *1, *3 (E.D. Wash. June 11, 2019) (65-year-old defendant legally blind in one eye did not qualify as having age-based deterioration ).

Even considering his various health conditions together, the Court finds that Mr. Brown has not proven that they show "serious deterioration in physical or mental health because of the aging process." Mr. Brown is comparable to the defendant in United States v. Young, who was 72 years old, had chronic kidney disease, diabetes, high cholesterol, high blood pressure, cataracts, and abdominal pain. Judge Aleta Trauger found that these conditions did not qualify as an extraordinary and compelling reasons for release based on age "standing alone." United States v. Young, No. 2:00-CR-00002-1, 2020 WL 1047815, at *9 (M.D. Tenn. Mar. 4, 2020). District courts have granted compassionate relief based upon serious age-based deterioration when heart condition, serious organ disease, or memory deterioration are present; none of which Mr. Brown presents with. See, e.g., United States v. Hansen, No. 07-CR-00520(KAM), 2020 WL 1703672, at *8 (E.D.N.Y. Apr. 8, 2020) (72-year-old had declining health shown by chest pains, heart disease, type II diabetes, glaucoma, and trouble walking); United States v. Bellamy, No. 15-165(8) (JRT/LIB), 2019 WL 3340699, at *1 (D. Minn. July 25, 2019) (71-year-old confined to a wheelchair with heart problems, chronic kidney disease, and diabetes established serious age-based deterioration warranting compassionate relief).

**COVID-19 Pandemic**

Mr. Brown's argument for compassionate release based on the COVID-19 pandemic is misplaced. As written, Note 1(D) allows for the Director of the BOP to determine extraordinary and compelling reasons "other than, or in combination with, the reasons described in" Notes 1(A), (B), or (C). U.S.S.G. § 1B1.13 cmt. n.1(D). In the wake of the First Step Act's expansion of compassionate release and without an update to the policy note, district courts are debating whether the BOP Director remains the sole arbiter of when "other" reasons exist. The Sixth Circuit has not yet addressed this issue. Some courts find that judges now have the authority to determine "other"

reasons, while other courts maintain that only the Director can find these other reasons. See United States v. Rodriguez, No. 2:03-CR-00271-AB-1, 2020 WL 1627331, at *4 (E.D. Pa. Apr. 1, 2020) (collecting cases on the split). The parties' arguments echo this division. Mr. Brown argues that the Court has authority under Note 1(D) to find extraordinary and compelling reasons for release based upon COVID-19. (Doc. No. 40 at 7–9). The government disagrees. (Doc. No. 43 at 5–7). Here, the Court does not need add to this dispute of interpretation because Mr. Brown is not entitled to relief under either interpretation.

Mr. Brown's age and medical conditions generally place him at a higher degree of susceptibility to COVID-19 than the overall prison population. The Centers for Disease Control and Prevention ("CDC") names several of Mr. Brown's conditions as presenting a heightened risk for severe illness from COVID-19, including diabetes or liver disease, "particularly if not well controlled;" those undergoing cancer treatment or who are taking "immune weakening medications;" and all individuals over the age of 65. *People Who Are at Higher Risk for Severe Illness*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/high-risk-complications.html (last visited June 4, 2020). As already discussed, Mr. Brown has no documented diagnosis of liver disease, and his lymphoma does not present an increased risk according to the CDC because he last underwent chemotherapy in July 2019 and Dr. Bryant indicates that he is not taking any immune weakening medication today. (Doc. Nos. 40-2 at 4; 51-1 at 1). That leaves his diabetes for which he receives a daily insulin injection.

Mr. Brown has not established that he is at a particularized risk of contracting COVID-19 at FCI-Butner Medium II. The broader Butner Correctional Complex is seriously affected by the disease, but that appears concentrated at a separate facility from where Mr. Brown is incarcerated.

Only two positive cases have been reported at Butner Medium II as of June 4, 2020. See *COVID-19 Cases*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/index.jsp (last visited June 4, 2020). The disease presents unique transmission risks in the close quarters of a prison, but Butner Medium II officials have been implementing safeguards to protect inmates in their care. (Doc. No. 55 at 6–9); see United States v. Gileno, No. 3:19-CR-161-(VAB)-1, 2020 WL 1307108, at *4 (D. Conn. Mar. 19, 2020). What is more, if released, Mr. Brown's risk of contracting the virus outside of prison would also be serious and that would bring with it risks to his family, friends, and the surrounding community.

The COVID-19 pandemic has impacted our entire society. However, "[t]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020). There are real concerns with close proximity among inmates in a prison during a pandemic. Absent a showing that Mr. Brown is at a specific risk of contracting COVID-19 at Butner Medium II, the Court does not find that extraordinary and compelling circumstances exist based on his susceptibility to the disease.[2]

An appropriate order will enter.

                                                          _____
                                                          WAVERLY D. CRENSHAW, JR.
                                                          CHIEF UNITED STATES DISTRICT JUDGE

---

[2] The Court has also considered Mr. Brown's argument relative to subsequent sentencing changes. (Doc. No. 40 at 1, 4). At his 2004 sentencing hearing, Mr. Brown's federal sentence was imposed to run consecutive to any anticipated state conviction. After Setser v. United States, 566 U.S. 231, 236 (2012), and a subsequent Guidelines amendment, the current version of the Sentencing Guidelines would have qualified him to concurrent sentences. U.S.S.G. § 5G1.3(c) (2018). However, this provision was not included in the version of the Sentencing Guidelines applicable at the time of Mr. Brown's sentencing and were not made retroactive, so they are not a basis for a sentence reduction today. See United States v. Dullen, 15 F.3d 68, 70–71 (6th Cir. 1994) (holding that only an amendment specifically listed in U.S.S.G. § 1B1.10 has retroactive effect).